**Daniel ELLSBERG, et al., Appellants,**

v.

**John N. MITCHELL, et al.**

**No. 84–5574.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 1, 1985.

Decided Dec. 5, 1986.

---

Lawrence Teeter, Los Angeles, Cal., for appellants.

Larry L. Gregg, Atty., U.S. Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Joseph E. diGenova, U.S. Atty. and Barbara L. Herwig, Atty., U.S. Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before ROBINSON and MIKVA, Circuit Judges, and SCALIA,* Circuit Justice.

Opinion for the Court filed by Circuit Justice SCALIA.

SCALIA, Circuit Justice:

This is the last in a series of three cases we decide today relating to the qualified immunity defense in the national security context. *See Halperin v. Kissinger* (*"Halperin II"*), 807 F.2d 180 (D.C.Cir. 1986); *Smith v. Nixon* (*"Smith II"*) 807 F.2d 197 (D.C. Cir.1986). As in the companion cases, plaintiffs seek damages from federal executive officials for allegedly violating their constitutional and statutory rights by electronically intercepting their telephone conversations. Defendants claim that qualified immunity shields them from liability since the wiretap, having had a validating national security purpose did not violate clearly established law. The issue is whether plaintiffs have presented sufficient concrete facts to avoid summary judgment, without further discovery, on their assertions that defendants' putative national security purpose was objectively unreasonble and that plaintiffs were subject to other illegal interceptions the existence of which defendants have concealed.

---

* Justice Scalia was a judge of this Court when this case was briefed and argued, and is a designated Circuit Justice of this Circuit on the date of this decision. *See* 28 U.S.C. §§ 42, 43(b) (1982).

I

This case, the factual background of which is recited more fully in our earlier decision, *see Ellsberg v. Mitchell ("Ellsberg I")*, 709 F.2d 51, 52–56 (D.C.Cir.1983), originates in the famous "Pentagon Papers" criminal prosecution, *United States v. Russo & Ellsberg*, Crim. No. 9373 (WNB) (C.D. Cal. dismissed because of government misconduct May 11, 1973), during which the government acknowledged that federal investigators had overheard one or more members of the defense team through warrantless wiretaps. Anthony J. Russo, Jr., a defendant in that case, and his defense lawyer, H. Peter Young, along with Russo's codefendant and other members of the defense team who are no longer parties here, brought this damage action against several federal agencies and former federal officials, including Attorney General John N. Mitchell, Secret Service Commissioner James J. Rowley, Secretary of State William Rogers, Secretary of Defense Melvin Laird, and Central Intelligence Agency Director Richard Helms. Both plaintiffs alleged that defendants violated their rights under the fourth amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, 82 Stat. 197, 211 (current version as amended by Title II of the Foreign Intelligence Surveillance Act of 1978, Pub.L. No. 95–511, 92 Stat. 1783, 1796, codified at 18 U.S.C. §§ 2510–2520 (1982)). (First and sixth amendment claims were also raised, but have not been preserved in this appeal.)

In the course of discovery (pursuant to which Mitchell and the defendant agencies were required to acknowledge all wiretaps whose acknowledgement was not precluded by the government's invocation of the state secrets privilege, *see Ellsberg I*, 709 F.2d at

59; *Ellsberg v. Mitchell*, Civ. No. 1879–72 (D.D.C. Nov. 6, 1981) (Order) defendants disclosed that four of Young's conversations were overheard between September 17, 1970 and June 23, 1971, during wiretap surveillance of the Los Angeles Chapter of the Black Panther Party. Defendants denied the existence of any interceptions of Russo's conversations and of any other interceptions of Young's conversations, not covered by the state secrets privilege. (Interceptions covered or not covered by the state secrets privilege will hereinafter be referred to as "privileged" or "nonprivileged" interceptions, respectively.)

Despite plaintiffs' pending discovery requests, the District Court granted summary judgment to defendants Rogers and Rowley on the basis of plaintiffs' failure to allege that they engaged in any illegal activity, and to defendants Laird and Helms for plaintiffs' failure to allege that they were personally involved in the interception, use, or disclosure of any interception of plaintiffs' communications. *Ellsberg v. Mitchell*, Civ. No. 1879–72 (D.D.C. Dec. 23, 1982) (Mem.Order), *amended by Ellsberg v. Mitchell*, Civ. No. 1879–72 (D.D.C. Feb. 1, 1983) (Order). In a separate order, the District Court also dismissed Russo's suit entirely because he was not overheard on any nonprivileged wiretap. (D.D.C. Dec. 23, 1982) (Order). Later, also despite Young's pending discovery motions, the District Court granted summary judgment to Mitchell on qualified immunity grounds against Young, finding that the "objective record thus establishes a valid [national security] rationale for the surveillance." *Ellsberg v. Mitchell*, Civ. No. 1879–72, slip op. at 4 (D.D.C. July 22, 1983) (Mem.Order). Plaintiffs appeal both orders.[1] We address them in reverse order.

---

**1.** A seven-line paragraph in plaintiffs' brief, without citation to any authority, challenges the District Court's order of June 10, 1982, Brief for Appellants at 45—which the brief erroneously refers to elsewhere as "[t]he order of May 28, 1982," *id.* at 3—dismissing defendants Walters, Ingersoll, Acree, Kleindienst, and Gray. However, plaintiffs failed to file a notice of appeal of that order, *see* Notice of Appeal (listing only orders of Dec. 23, 1982 and July 27, 1983), made

no reference to the issue in their statement of issues presented, and declined to respond to defendants' assertion that such omissions constituted a waiver of appeal as to that order. Accordingly, that ground of error has been waived. *See* FED.R.APP.P. 3(a), 28(a); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). *Compare Black Panther Party v. Smith*, 661 F.2d 1243, 1276–77 (D.C.Cir.1981), *vacated on other*

## II

■ In granting summary judgment to Mitchell on qualified immunity grounds, the District Court properly reasoned that "*Harlow* [*v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982),*] precludes us from ... asking if national security was the actual or only reason for defendant's conduct," *Ellsberg,* slip op. at 4, where, as here, there is no dispute that defendants purported to act out of national security concerns, *see Halperin II,* 807 F.2d at 188–89.

Defendants have alleged sufficient objective facts to place the wiretap of the Los Angeles Chapter of the Black Panther Party (which intercepted all four conversations at issue here) in a rational national security context. We so held in a previous challenge to the legality of the same wiretap. *Sinclair v. Kleindienst,* 645 F.2d 1080, 1082–85 (D.C.Cir.1981). The Black Panther Party was known to have had "contacts with foreign revolutionaries," *id.* at 1082, which, we emphasized, "provide the clearest justification for a national security exception to Title III," *id.* at 1084; *see also Ellsberg I,* 709 F.2d at 71 (MacKinnon, J., concurring in part and dissenting in part) ("[E]xamination ... leaves no room to doubt that these warrantless surveillances fell within the putative 'foreign agent exception' to the warrant requirement of the Fourth Amendment.").

Even after considerable document discovery, plaintiffs can point to no objective facts that suggest a conclusion contrary to *Sinclair.* Instead, based on indicia of Mitchell's "law enforcement philosophy," Brief for Appellants at 29, and a catalogue of allegedly illegal *FBI* activity (entirely unrelated to the challenged wiretap), *id.* at 22–29, they urge us to find that Mitchell's assertion of a national security purpose was pretextual. As we have said, such a subjective inquiry is not permitted. *See Halperin II,* 807 F.2d at 188; *Smith II,*

807 F.2d at 200–01. Since (in light of the complaint's inadequacy) even the discovery that plaintiffs have already conducted should not have been allowed, *see Smith II,* 807 F.2d at 200–01; *Hobson v. Wilson,* 737 F.2d 1, 29–31 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed. 2d 142 (1985), plaintiffs' requests for further discovery before the summary judgment determination were properly denied.[2]

## III

■ Plaintiffs challenge the District Court's grant of summary judgment in favor of Rowley, Rogers, Laird, and Helms, and its dismissal of Russo's suit, on the ground that a genuine issue exists as to the truth of the government's denial that plaintiffs were subject to other, non-privileged wiretaps that the government has concealed. Brief for Appellants at 9. The mere denial of a denial, however, does not suffice to create a genuine issue of fact for purposes of FED.R.CIV.P. 56(c). Plaintiffs alleged no concrete facts that would sustain a finding that such nonprivileged interceptions existed. Plaintiffs argue, in essence, that the government's "prolonged history of fraudulent misrepresentation" regarding its wiretapping activities and other prosecutorial misconduct could convince a jury that federal officials are in the "habit" of concealing such wiretaps from courts and are now behaving pursuant to that "habit." Brief for Appellants at 31 (citing FED.R.EVID. 406 ("Habit; Routine Practice")); *see also id.* at 31–43. Further, each plaintiff enumerates a list of alleged governmental illegalities demonstrating official interest in him during and after the Pentagon Papers investigation and trial. *Id.* at 30, 44–45. For example, Russo alleges that he was subject to unspecified assassination attempts and "death threats from government connected sources." *Id.* at 45. Young alleges that he could not locate some of his office files for several months,

---

*grounds,* 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982).

**2.** Plaintiffs have not addressed on appeal, and are assumed to have abandoned, the claim that defendants violated any clearly established

fourth amendment reasonableness requirements. *See Smith II,* 807 F.2d at 203 n. 3. *Compare Halperin II,* 807 F.2d at 191–93; *id,* (Mikva, J., with Robinson, J., concurring).

and that his car was once unjustifiedly towed, and when he claimed it, local police took two hours to locate a briefcase he had left in it—from which he infers that the FBI both burglarized his office and copied documents in his briefcase—from which he urges us to infer that there must have been a wiretap as well. *Id.* at 30.

We decline to license any plaintiff to embark on a fishing expedition in government waters on the basis of such speculation. *Cf. United States v. Kember,* 648 F.2d 1354, 1368–70 (D.C.Cir.1980) (criminal defendant must bear heavy burden to overcome government's positive denial of electronic surveillance); *United States v. Williams,* 580 F.2d 578, 584–87 (D.C.Cir.) (same), *cert. denied,* 439 U.S. 832, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978). The extensive documentary discovery in which plaintiffs have already engaged (supplemented by Russo's Freedom of Information Act request) has turned up no concrete facts that would indicate that nonprivileged wiretaps existed. As we noted earlier, even that discovery was impermissibly granted; in addition to the fact that further discovery would evidently be fruitless, it too would be impermissible.

\* \* \* \* \* \*

The judgments of the District Court are *Affirmed.*