Peter William DICKSON, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

Civ. No. 91–2478 (CRR).

United States District Court,
District of Columbia.

Sept. 8, 1993.

W. Edward Morgan, Washington, DC, for plaintiff.

Mark E. Nagle, Asst. U.S. Atty., Washington, DC, for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.[1]

### INTRODUCTION

Plaintiff, a former Political–Military Analyst for the Central Intelligence Agency ("CIA"), claims that high-ranking CIA officials engaged in an "illegal vendetta" against him that resulted in the termination of his employment. The Plaintiff brings suit against several named CIA officials, 60 unnamed CIA employees, former President George Bush, the CIA itself, and the United States government, claiming a variety of constitutional violations. Defendants move to dismiss these claims on several grounds.[2] In analyzing these arguments, the Court has carefully examined the motions, the underlying law, and the pleadings themselves. The Court will grant Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6).

### BACKGROUND

A 20–year veteran of the CIA, Plaintiff alleges that from 1988 through his dismissal in 1991, he was the repeated target of intimidation and humiliation in his employment. He charges that the CIA harassed him to the point of interfering with his abilities to carry out his job; illegally forced him to undergo psychiatric review; and wrongfully gave him a negative job performance evaluation which led to his termination, all in an attempted cover-up by CIA officials in their vendetta.

In his Complaint filed on October 2, 1991, the Plaintiff states that he was wrongfully and illegally accused of an undefined act of "disloyalty" toward then Director of the CIA, William J. Casey, and then Deputy Director, Robert M. Gates, for an "incident" that took place in late February, 1987. The Plaintiff contends that notwithstanding Defendants' harassment from 1988 through his termination in 1991, he has conducted his duties competently and professionally. As part of this alleged harassment and in an alleged attempt to demean and discredit him, in February, 1990, the CIA ordered the Plaintiff to undergo psychiatric evaluation. After the Plaintiff protested that this order violated Agency regulations and medical ethics, the CIA permitted an "outside" psychiatrist to examine him. The parties agree that the Clinical Review Board of the CIA's Office of Medical Services recommended that the Plaintiff be found fit for duty on the basis of the psychiatrist's examination.

In response to such perceived harassment, the Plaintiff claims to have filed internal grievances in accordance with CIA procedures, which remain administratively unresolved. He further alleges that the incident

---

1. This case was filed in 1991 and was inherited a few months ago from the Court's late colleague, United States District Judge George H. Revercomb.

2. In the alternative to dismissal, the Defendants have also filed motions for summary judgment or judgment on the pleadings. The Court does not find it necessary to render a judgment on those grounds.

involving disloyalty was cited as justifying separation at a Personnel Evaluation Board meeting on February 13, 1991. The parties agree that in a June 18, 1991 memorandum, Defendant George W. Owens concurred with the Committee's recommendation to terminate the Plaintiff. They also agree that on July 24, 1991, Defendant Kemp, a CIA personnel officer, informed the Plaintiff that Defendant Kerr had reviewed and approved Defendant Owens' decision to separate the Plaintiff from his employment.

Under a liberal reading of the Complaint, the Court believes the Plaintiff is suing four of the Defendants in both their individual and official capacities, and the remainder in their official capacities. He seeks both money damages and injunctive relief, and argues that the Court must intervene to prevent the destruction of documents necessary to determine the facts underlying this case.

### DISCUSSION

The Court first discusses whether it has personal jurisdiction over Defendants Gates, Kerr, Owens, and Kemp in their individual capacities, and concludes that it does not. The Court then analyzes whether there is an actionable claim for monetary damages or injunctive relief against the Defendants in their official capacities, and concludes that the Complaint is insufficient to bring a claim for either kind of relief.

 Defendants have moved to dismiss these claims under Fed.R.Civ.P. 12(b)(6). For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, all factual allegations contained in the complaint are to be construed as true, and all doubts and ambiguities are to be decided in the pleader's favor. *Doe v. Unit-*

ed States Dep't of Justice, 753 F.2d 1092, 1102 (D.C.Cir.1985). However, Fed.R.Civ.P. 8 requires that "a complaint must give the opposing party 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Rochon v. F.B.I.*, 691 F.Supp. 1548, 1564 (D.D.C.1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). The legal standard for a motion to dismiss applies to questions of jurisdiction and substantive claims equally.

### I. BECAUSE THE PLAINTIFF FAILS TO ALLEGE SUFFICIENT CONTACTS BETWEEN THE DEFENDANTS AND THE DISTRICT OF COLUMBIA, THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

 Curiously, Plaintiff asserts jurisdiction over the CIA under 28 U.S.C. § 1391, as well as under 5 U.S.C. § 1508, but does not mention any statute or rule to obtain jurisdiction over the other Defendants, nor mention the capacity in which he is suing them. Further confusing the issue, 28 U.S.C. § 1391, titled "Venue Generally," deals with *venue* rather than *jurisdiction*, and 5 U.S.C. § 1508 authorizes judicial review of Civil Service Commission determinations involving State officials in elections and political campaigns. Defendants Gates, Kerr, Owens, and Kemp move to dismiss for lack of personal jurisdiction over them as individuals. In light of recent warnings from our Circuit regarding questions of jurisdiction [3] and traditional analysis of the facts presented in the pleadings, the Court finds that it lacks personal jurisdiction over the Defendants in their individual capacities.[4]

---

**3.** The Court of Appeals has instructed district courts to analyze challenges to personal jurisdiction and venue with care, in order to guard against plaintiffs manufacturing venue in the District of Columbia by improperly naming high government officials as defendants. *See Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C.Cir. 1993).

**4.** Because the Court finds insufficient personal jurisdiction over these Defendants in their individual capacities, it does not address the Defendants' contentions of Plaintiff's insufficient ser-

vice of process over them as individuals; Plaintiff's inability to sue for monetary damages in a *Bivens* case; Plaintiff's failure to satisfy the *Bivens* heightened standard of pleading; and individual Defendants' entitlement to immunity.

Alternatively, even if this conclusion were erroneous, the Plaintiff's Complaint would certainly fail to meet the heightened *Bivens* standard of pleading. As our Circuit has stated, "plaintiffs must, at the very least, specify the 'clearly established' rights they allege to have been violated with ... precision." *Martin v. Malhoyt*, 830 F.2d 237, 254 (D.C.Cir.1987) (citation omitted),

■ There are two statutory provisions authorizing a court to grant personal jurisdiction, neither of which are available to the Plaintiff. Under the first of these provisions, which permits the recognition of an enduring relationship between a person and the District, "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C.Code § 13–422. Responding to Defendants' motion, the Plaintiff contends that the CIA officials have established an "enduring relationship" with the District, relying on *Rochon v. F.B.I.*, 691 F.Supp. 1548 (D.D.C.1988). However, this assertion is unfounded both legally and factually. *Rochon* is inapposite to this case, in that *Rochon* found jurisdiction under the District's long-arm statute. *Id.* at 1559. Moreover, the Plaintiff presents no facts to establish such an "enduring relationship" between the District and the Defendants *as individuals;* rather, he merely lists D.C. mailing addresses at the CIA for the Defendants, and makes no allegations regarding residences or principal places of business.

■ The Court must therefore look to the District's long-arm provision, which grants personal jurisdiction for claims based upon conduct. Where there is no indication that a defendant resides in the District, this statute provides the only means through which a district court may obtain personal jurisdiction over a defendant. *See Reuber v. United States*, 750 F.2d 1039, 1049 (D.C.Cir.

*reh'g denied*, 833 F.2d 1049 (D.C.Cir.1987). Furthermore, the individual defendants are shielded from civil liability damages where their conduct is not in violation of established constitutional or statutory rights of which a reasonable person would know. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1016 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1513, 117 L.Ed.2d 650 (1992); *Harris v. District of Columbia*, 932 F.2d 10, 13 (D.C.Cir.1991). The Plaintiff's constitutional claims against the individual Defendants are far too vague to survive a 12(b)(6) motion under this standard.

The Court does not read the Complaint to construe a claim against then President Bush, nor the 60 John or Jane Does, in their individual capacities.

1985). The relevant portion of the statute provides personal jurisdiction over a person for claims arising from the person's "transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1).[5] The portion of the long-arm statute pertaining to the transaction of business is "coextensive with the Constitution's due process limit." *First Chicago Int'l v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1377 (D.C.Cir.1988). Consequently, the Plaintiff must demonstrate that finding jurisdiction over the individual defendants would not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Even under this "minimum contacts" doctrine, the Plaintiff's Complaint is inadequate. Here, the Complaint presents no factual connection between the individuals' activities and the District.[6]

**II. THE COURT MUST DISMISS PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES, AS HE DID NOT ADEQUATELY CLAIM AN INTEREST OR RIGHT THAT WOULD WARRANT INJUNCTIVE RELIEF, AND SOVEREIGN IMMUNITY PRECLUDES RECOVERY FOR MONETARY RELIEF.**

Because the Plaintiff cannot sue Defendants Gates, Kerr, Owens, and Kemp in their individual capacities, the Court must now examine his action against the United States, the CIA, and the individual Defendants in

5. In a limitation to this provision, D.C.Code § 13–423(b) "bars ... claims unrelated to the acts forming the basis for personal jurisdiction." *Pollack v. Meese*, 737 F.Supp. 663, 666 (D.D.C. 1990) (citing *Willis v. Willis*, 655 F.2d 1333, 1336 (D.C.Cir.1981)).

6. In a motion, the Plaintiff argues that "[t]he activities of the individual defendants in and around Washington, D.C." warrant a finding of jurisdiction under *Rochon v. F.B.I.*, 691 F.Supp. 1548 (D.D.C.1988). Response to Defendants' Motion to Dismiss or in the Alternative for Judgement on the Pleadings at 5. However, the defendants in *Rochon* were employed at FBI headquarters in the District, according to the complaint in that case. The CIA is headquartered in Arlington, Virginia. Moreover, in response to a 12(b)(6) motion, the Plaintiff's vague assertions of fact in a later motion are too little and too late.

their official capacities. Under the Court's most liberal reading of his Complaint, the Plaintiff apparently raises a variety of constitutional claims,[7] although he does not specify which of the Defendants violated which constitutional provision. The Plaintiff alleges generally that the determination to terminate him was "illegal and wrongful." More specifically, he claims that the CIA's ordering him to have a psychiatric examination "violated Agency procedures and the constitutional rights of the Plaintiff to wit: the Right of Privacy and the denial of equal application under the law." The Plaintiff further alleges violations of due process and internal regulations for the CIA's institution of proceedings without setting forth Notice Grounds, and its issuance of a negative job performance evaluation.

The Plaintiff seeks injunctive relief in the form of reinstatement to his former position, judicial intervention to prevent the destruction of documents, as well as access to the data and information that was previously available to him. Furthermore, he seeks monetary damages in the amount of $6,000,-000, and requests additional discovery. The Court concludes that the Plaintiff has failed to state a claim for any form of relief.

### A. THE PLAINTIFF MAY NOT MAINTAIN AN ACTION FOR INJUNCTIVE RELIEF ON A CONSTITUTIONAL CLAIM, BECAUSE HE HAS NOT ALLEGED A PROTECTIBLE PROPERTY OR LIBERTY INTEREST FOR A DUE PROCESS CLAIM AND HAS INSUFFICIENTLY DESCRIBED ANY BASIS FOR A FIRST AMENDMENT CLAIM.

■■■■ The Plaintiff claims violations of the First, Fourth, and Fifth Amendments. The Court grants the Defendants' Motion to Dismiss with respect to equitable relief on the

grounds that the Plaintiff has inadequately alleged a constitutional violation. Under this standard, none of the Plaintiff's claims can survive Defendants' Motion to Dismiss. He has not alleged a protectible property or liberty interest which would warrant due process protection, nor has he alleged any cognizable free speech or right to privacy claim.[8]

■■■■ The legal reasoning of *Doe v. Gates*, 981 F.2d 1316 (D.C.Cir.1993), *petition for cert. filed*, 62 U.S.L.W. 3146 (June 21, 1993) (No. 92–2025), which held that an employee terminated by the CIA did not have a cognizable property interest in continued employment, similarly establishes why the Plaintiff in this case lacks a property interest entitling him to due process. Property interests in employment are created by non-constitutional independent sources, such as statutes or existing understandings. *Id.* at 1320 (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). The Plaintiff provides no statutory support. Section 102(c) of the National Security Act of 1947 authorizes the CIA director "in his discretion, [to] terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States ·. . .," 50 U.S.C. § 403(c), and "[f]ederal employees are chargeable with knowledge of governing regulations or statutes." *Doe v. Gates* at 1321. Therefore, despite his Complaint's assertion "That by reason of his professional status, his training, experience and seniority of approximately twenty years with the Defendant Agency, [he] had a reasonable expectation of continued employment," he had no protectible property interest. *See Id.* (holding that "Doe's reliance on alleged statements by other employees and general provisions in the Agency handbook does not constitute a rea-

---

7. As the Complaint is devoid of any reference to a statutory or common-law cause of action, the Court is unable to ascertain the legal basis for the Plaintiff's arguments that the CIA's violation of its regulations was "illegal." *See Webster v. Doe*, 486 U.S. 592, 601, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988) (holding in a CIA termination case that "§ 701(a)(2) accordingly precludes judicial review of [discharge] decisions under the [Administrative Procedure Act]").

8. The Court summarily dismisses the Plaintiff's claim for "denial of equal application under the law," because the National Security Act of 1947 confers upon the Director "extraordinary deference" in termination decisions of individual employees, *Webster v. Doe*, 486 U.S. 592, 601, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988), and because there is no indication in his Complaint that the Plaintiff belongs to a suspect, quasi-suspect, or other classification entitled to equal protection.

sonable 'legitimate expectation of continued employment....") (citation omitted).

■ The Plaintiff also fails in his attempt to plead a due process claim based upon a liberty interest. Under a two-step test, a plaintiff making such a claim must first allege that the government's defamation caused harm to an interest beyond reputation, such as loss of present or future government employment. Secondly, a plaintiff must allege that the government has actually stigmatized his or her reputation by, for example, charging the employee with dishonesty, and that the stigma has hampered future employment prospects. *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1111 (D.C.Cir.1985). The Complaint does not approach this standard, alleging only an assumption that he was terminated for incompetence, and failing to allege with particularity a "stigma" or any form of potential employment harmed by such "stigma."

■ The Court also dismisses any possible free speech claim that may arise from the Plaintiff's Complaint. In his Response to Motion to Dismiss, the Plaintiff asserts that

Defendants' intimidation, harassment, stigmatization and termination allege and, in fact, constitutes a violation of Plaintiff's First Amendment right to free speech, insofar as these acts resulted from a legitimate communication by Plaintiff to a third party of non-classified information about the Agency.

However, his pleading only mentions an undescribed "incident," gives no indication in what form such harassment occurred, and lacks any reference to the First Amendment. The vagueness of Plaintiff's Complaint and the irrelevancy of factual allegations in papers filed subsequent to the Complaint to a 12(b)(6) motion compel the Court to dismiss any First Amendment claim.

■ Construing in the Plaintiff's favor his nebulous contention that the CIA's order to undergo a psychiatric examination violated his "Right of Privacy," the Court cannot determine a cause of action that would survive Defendants' Motion to Dismiss.[9] This

allegation may be read to mean that the order is invalid in relation to his subsequent termination. However, he admits that he was found fit for duty, and his Complaint explicitly assumes that his discharge was based on performance-related concerns. As discussed above, such a challenge to the procedure behind his separation from the CIA is not entitled to constitutional protection because of a lack of protectible interest.

## B. SOVEREIGN IMMUNITY BARS THE PLAINTIFF'S CLAIM FOR MONETARY DAMAGES FOR THE DEFENDANTS' ALLEGED CONSTITUTIONAL VIOLATIONS.

■ In addition to injunctive relief, the Plaintiff seeks monetary damages to compensate him for past and future loss of employment and damages for loss of publication. The Court must dismiss Plaintiff's claim for monetary relief under the doctrine of federal sovereign immunity. According to this doctrine, the United States may not be sued absent an express waiver from Congress. *Block v. North Dakota, ex rel. Board of University and School Lands*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). This immunity bars "suits for money damages against officials in their *official* capacity absent a specific waiver by the government," including constitutional claims. *Clark v. Library of Congress*, 750 F.2d 89, 103–04 (D.C.Cir.1984). No such waiver has been alleged. Therefore, the Plaintiff has neither an actionable claim for monetary relief against the federal government nor against its officials acting in their official capacity.

## III. BECAUSE THE PLAINTIFF FAILED TO PLEAD FACTS WITHIN HIS KNOWLEDGE AND FAILED TO MAKE A COLORABLE CONSTITUTIONAL CLAIM, THE COURT DENIES THE PLAINTIFF'S REQUESTS FOR BOTH DISCOVERY AND AMENDMENT OF HIS COMPLAINT.

The Plaintiff seeks to amend his Complaint after obtaining additional information from

---

**9.** Because the Plaintiff's first sentence of his Complaint states that the action involves "the review of the illegal and unconstitutional determination" to discharge the Plaintiff, the Court

does not find a claim of Fourth Amendment invasion of privacy in an independent context separate from his termination.

the CIA. After reviewing the legal standards for pleading amendment and discovery, the Court concludes that the Plaintiff may not amend his Complaint nor pursue further discovery on the constitutional claims alleged.[10]

■■■ In the alternative to a grant of jurisdiction, the Plaintiff asks that the Court permit discovery to assess personal jurisdiction over the Defendants in their individual capacities. The Court denies this request. While discovery for jurisdiction is freely permitted under the federal rules, district courts have broad discretion over it. *Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 788 (D.C.Cir. 1983), *cert. denied, Naartex Consulting Corp. v. Clark,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984) (holding that a district court did not abuse its discretion in denying discovery where "the pleadings contained no allegations of specific facts that could establish the requisite contacts with the District").

■■■ In his request for jurisdictional discovery, the Plaintiff again relies on *Rochon.* Unlike the Plaintiff in this case, however, the Plaintiff in *Rochon* provided in his complaint the factual background warranting discovery for jurisdiction over FBI defendants not employed in the District, and submitted a sworn affidavit that those agents kept in regular contact with FBI headquarters in the District. *Id.* at 1560. In contrast, the Plaintiff's complaint is bare on the facts, and the CIA is headquartered in Virginia. Basic fact-finding should precede the filing of a lawsuit; the insufficiency of the Plaintiff's Complaint does not warrant any form of discovery for personal jurisdiction.

■■■ The Plaintiff also seeks discovery to develop the substance of his legal claims and amend his Complaint, asserting that the CIA's secrecy and tradition of bad faith may be responsible for the weaknesses in his case:

> Even assuming, for the sake of argument, that Plaintiff's Complaint is not a model of specificity, the Court should take into consideration certain unique factors present in

this case. The Agency is historically, by its very nature, involved in clandestine operations, secretive and resistant to public scrutiny and accountability. Plaintiff has been reticent to make full disclosure of more facts than necessary to satisfy the requirements of notice pleading in order to prevent the Agency from manufacturing a defense by destroying important documents, fabricating new documents and coordinating testimony. Before granting the dismissal requested by Defendants, Plaintiff should be granted the opportunity to amend his Complaint, along with adequate safeguards to ensure that Defendants do not illegally derive an advantage from this additional, factual disclosure.

Response to Motion to Dismiss, at 12–13. With regard to amending a complaint, the relevant portions of Fed.R.Civ.P. 15(a) state that "a party may amend his pleadings only by leave of the court," and leave to amend "shall be freely granted when justice so requires." This Circuit permits denial "if the amendment would result in delay or undue prejudice to the opposing party, or if a party has had sufficient opportunity to state a claim and has failed to do so." *Williamsburg Wax Museum v. Historic Figures, Inc.,* 810 F.2d 243, 247 (D.C.Cir.1987). Here, the Plaintiff has failed to plead facts which are in his knowledge, failed to give any indication of the kind of facts he is "reticent" to disclose, and waited 20 months to request amendment.

■■■ With regard to discovery in the CIA's records, the Supreme Court has stated that:

> "the District Court has the latitude to control any discovery process which may be instituted so as to balance respondent's need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality and the protection of its methods, sources, and mission." *Webster v. Doe,* 486 U.S. 592, 604, 108 S.Ct. 2047, 2054, 100 L.Ed.2d 632 (1988).

The Plaintiff's allegations have been factually vague and legally non-specific regarding ex-

---

**10.** The Court is also aware that this is not a *pro se* plaintiff, but one represented by experienced and competent counsel.

actly what information or documents he is seeking that would enable him to make a claim. Unfounded speculations regarding the prospects of the Defendants' compliance in litigation are not persuasive to the Court. *See, e.g., Ellsberg v. Mitchell,* 807 F.2d 204 (D.C.Cir.1986), *cert. denied,* 484 U.S. 170, 108 S.Ct. 197, 98 L.Ed.2d 148 ("We decline to license any plaintiff to embark on a fishing expedition in government waters on the basis of" speculation of government misbehavior). Therefore, the Court concludes that the Plaintiff has failed to demonstrate a colorable claim which would justify any form of discovery.

## CONCLUSION

The Court grants the Defendant's Motion to Dismiss the Plaintiff's claim that his discharge from the CIA violated his constitutional rights. In suing four of the CIA officials in their individual capacities, the Plaintiff failed to plead sufficient contacts with the District of Columbia that would warrant a grant of personal jurisdiction over them. With respect to his claim against the United States, the CIA, and the Defendants in their official capacities, the Plaintiff's Complaint did not sufficiently state an actionable claim that could be redressed by injunctive relief, and sovereign immunity bars the Plaintiff's request for monetary damages. Because the Plaintiff failed to plead sufficient facts in his Complaint, no discovery or amendment of the pleadings is warranted in the context of this particular case.

## ORDER

Before the Court are the Defendants' Motion to Dismiss in Part, or in the Alternative, For Partial Summary Judgment, and Defendants's Motion to Dismiss, or in the Alternative, For Judgment on the Pleadings. Upon consideration of the said motions, the supporting and opposing memoranda, the applicable law, and the pleadings, the Court shall grant the Defendants' Motion to Dismiss.

Accordingly, it is, by the Court, this 8th day of September, 1993,

ORDERED that the defendants' Motion to Dismiss shall be, and hereby is, GRANTED.