William E. RANGER, Plaintiff,

v.

George TENET, Director of the Central Intelligence Agency, Defendant.

No. CIV.A.01–2138 (RMC).

United States District Court, District of Columbia.

April 16, 2003.

John Joseph McDermott, Hall, Estill, Hardwick, Gable, Golden & Nelson, Washington, DC, for Plaintiff.

Madelyn Elise Johnson, Lisa Sheri Goldfluss, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

COLLYER, District Judge.

William E. Ranger has sued George Tenet, in his official capacity as Director of the Central Intelligence Agency ("CIA"), alleging that his Fifth and Fourteenth Amendment rights were violated during the administrative process through which he appealed the revocation of his security clearance. He seeks relief under 42 U.S.C. §§ 1983 and 1988 for monetary damages and attorneys' fees, and under 28 U.S.C. § 2201 for a declaratory judgment. The CIA has moved to dismiss the complaint, arguing that the Court has no jurisdiction to adjudicate these claims under Federal Rule of Civil Procedure 12(b)(1) and that Mr. Ranger has failed to state a claim upon which relief can be granted under Rule 12(b)(6). For the reasons stated below, the Court GRANTS the CIA's motion in part and DENIES it in part.

## I. BACKGROUND [1]

In December 1995, American Management Systems ("AMS"), a contractor to the CIA, hired Mr. Ranger as a corporate security officer. Upon his arrival at AMS, the CIA granted Mr. Ranger a provisional security clearance and advised him to submit an SF–86 form so that he could obtain the highest clearance level for government contractors, Industrial Security Staff Approval Top Secret ("ISSA/TS"). He submitted the requisite paperwork in March 1996. CIA personnel informed him that he was granted an Industrial Security Approval Top Secret ("ISA/TS") clearance, which would be upgraded upon successful completion of two polygraph examinations. Mr. Ranger passed both polygraph examinations in June 1996. In late November 1996, the CIA disapproved his application for ISSA/TS clearance and revoked its ISA/TS security approval, which had enabled him to work as a corporate security officer for the previous twelve months. Thereafter, the CIA notified AMS that the continued employment of Mr. Ranger as a corporate security officer violated the CIA's policies. AMS terminated Mr. Ranger's employment in late February 1997.

Mr. Ranger appealed the denial of his security clearance through the administrative process offered by the CIA. He was denied the opportunity to appear in person before an adjudicative authority; however, he did eventually meet with Mr. Tenet, who was the CIA's Acting Director at the time. Mr. Tenet promised to "follow [Mr.] Ranger's appeals process to closure." Compl. ¶ 16.

Mr. Ranger's appeal was denied finally in April 1998. Among other conclusions, the final letter denying his appeal expressed "doubts regarding [his] honesty, trustworthiness, reliability, and willingness to comply with rules and regulations." Pl.'s Response to Def.'s Mot. to Dismiss ("Opp.") Ex. A at 4. Mr. Ranger continued to seek review outside the formal review process and, "[i]n response to [Mr.] Ranger's efforts and Director Tenet's, the CIA conducted additional inquiries and adjudications." Compl. ¶ 18. On April 19, 2001, he was notified that he was eligible for an ISSA/TS clearance pending receipt of a sponsor's request that he work on a classified CIA project.

---

**1.** Consistent with the standard of review for a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court accepts the allegations in the complaint as true.

The complaint here was filed in October 2001. Count One alleges a denial of due process because "Ranger was not afforded an opportunity to personally appear before the adjudicative tribunal of the CIA" and "representatives of the CIA placed false and libelous material about Ranger in the administrative record." *Id.* ¶ 21. Count Two alleges an equal protection claim because the CIA's decision to deny Mr. Ranger a security clearance "was made without a rational basis" and thereby caused "loss of employment, interference with Ranger's ability to secure future employment and professional and personal embarrassment." *Id.* ¶ 23, 24. To redress these alleged wrongs, Mr. Ranger seeks a "declaratory judgment that [the CIA] violated his constitutional rights, monetary judgment for damages in the amount of $100,000.00 plus court costs, and attorneys['] fees." *Id.* at 4.

## II. STANDARD OF REVIEW

As the plaintiff, Mr. Ranger bears the burden of establishing subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Judicial Watch, Inc. v. FBI,* 190 F.Supp.2d 29, 32 (D.D.C.2002). In determining its jurisdiction, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in Mr. Ranger's favor. Such allegations, however, " 'will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13–14 (D.D.C.2001) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1350). The Court is permitted to consider information outside the pleadings. *See Lipsman v. Sec'y of Army,* 257 F.Supp.2d 3, 6–7, No. 02–151, 2003 U.S. Dist. LEXIS 4882, at *6–7 (D.D.C. Mar. 31, 2003).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) will be denied unless the plaintiff "can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). The issue is not whether Mr. Ranger will ultimately prevail on the merits, but whether he has properly stated a claim. In reviewing such a motion, the factual allegations of the complaint are taken as true and all reasonable inferences are drawn in Mr. Ranger's favor. *See Glymph v. District of Columbia,* 180 F.Supp.2d 111, 113 (D.D.C. 2001).

## III. ANALYSIS

### A. Monetary Damages

The CIA argues for dismissal of Mr. Ranger's claims for monetary damages based on the doctrine of sovereign immunity. It is well settled that a lawsuit against a federal employee in his official capacity—as is the case here—constitutes a lawsuit against the United States. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Graves v. United States,* 961 F.Supp. 314, 318 (D.D.C.1997). The United States, in turn, may be sued in federal court "only if Congress has waived sovereign immunity for the lawsuit." *Deaf Smith County Grain Processors, Inc. v. Glickman,* 162 F.3d 1206, 1210 (D.C.Cir.1998). Such a waiver must be express and unequivocal, and the Court will strictly construe it. *See Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims.").

To defeat the CIA's motion to dismiss for lack of jurisdiction, Mr. Ranger

must show that the United States has waived sovereign immunity. *See Uberoi v. Equal Employment Opportunity Comm'n*, 180 F.Supp.2d 42, 45 (D.D.C.2001) ("A claimant's failure to establish waiver deprives the court of subject-matter jurisdiction."). He contends that the United States' "unmistakable waiver of sovereign immunity derives from the establishment of an administrative process which the CIA has declined to follow." Opp. at 2. Mr. Ranger has failed to direct the Court, however, to any statute or rule contemplating monetary damages as a remedy for a violation of that process.[2] Therefore, he has not met his burden in this regard.

42 U.S.C. § 1983—the statutory basis on which Mr. Ranger relies for his monetary damages claims—also does not amount to a waiver of sovereign immunity under these circumstances. Mr. Ranger has failed to state a claim under § 1983 for two independent reasons.[3] First, the complaint names Mr. Tenet as the defendant in his official capacity as Director of the CIA. Neither the CIA nor its Director in his official capacity, however, may be sued for monetary damages under § 1983.[4] *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983."). Second, § 1983 applies only to persons acting under color of state or territorial—not federal—law. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Graman v. NASD*, 1998 WL 294022 at *2, No. 97-1556, 1998 U.S. Dist. LEXIS 11624, *5 n. 2 (D.D.C. Apr. 27, 1998) ("Section 1983 provides a cause of action against state, not federal, conduct."). Consequently, even assuming that § 1983 authorized a lawsuit against the CIA, Mr. Ranger would have to show that the agency was acting under color of *state* law during the administrative appeals process, which he has not done. To the contrary, the CIA, as an agency of the federal government, was presumably acting under color of federal statutes and agency procedures when it allegedly violated Mr. Ranger's Fifth and Fourteenth Amendment rights.

 Because Mr. Ranger has failed to state a cognizable claim under § 1983,[5]

2. Indeed, money damages are generally unavailable in cases involving review of a federal agency's administrative decision. *See, e.g., M.K. v. Tenet*, 99 F.Supp.2d 12, 24 (D.D.C. 2000) (Although the Administrative Procedure Act waives sovereign immunity for suits seeking judicial review of federal administrative agency action, that "waiver does not apply . . . to suits for money damages.").

3. 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

4. The complaint makes no allegations that would support a lawsuit against Mr. Tenet in his individual capacity. In fact, Mr. Ranger acknowledges that it was only because of Mr. Tenet's intercession that the CIA reversed its decision and eventually granted him the security clearance for which he had applied.

5. It may be that Mr. Ranger has confused § 1983 with a cause of action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Bivens* established dam-

his claim under § 1988 must fail as well. He concedes that "if he is unsuccessful on his claims arising out of 42 U.S.Code § 1983, he cannot recover attorneys['] fees under 42 U.S.Code § 1988." Opp. at 1. Therefore, the Court dismisses Mr. Ranger's claims for monetary damages and attorneys' fees.

## B. Declaratory Judgment

Mr. Ranger seeks a judicial declaration under 28 U.S.C. § 2201 that his constitutional rights were violated during the administrative appeals process. He asserts that he was denied constitutional due process and equal protection, including the denial of the right to appear personally and to present evidence, and that he has suffered loss of employment, loss of future job opportunities, and embarrassment.

Mr. Ranger's claim under the Equal Protection Clause of the Fourteenth Amendment is unsupported by the allegations in the complaint and must be dismissed. As a preliminary matter, the Fourteenth Amendment applies only to states and not to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Even construing Mr. Ranger's equal protection claim as arising under the Fifth Amendment, he has not made the bare minimum allegations necessary to withstand a motion to dismiss. Mr. Ranger does not identify himself as a member of *any* class, suspect or otherwise. *See Dickson v. United States*, 831 F.Supp. 893, 898 n. 8 (D.D.C.1993). For example, he does not state his race, national origin, age, or gen-

der (which the Court only assumes to be male based on his first name). As a result, the Court cannot even make a threshold determination of whether or how the CIA has allegedly treated similarly-situated groups differently. *See Gillet v. King*, 931 F.Supp. 9, 15 (D.D.C.1996).

On the other hand, Mr. Ranger has presented a viable claim for the denial of due process under the Fifth Amendment. Although no one may hold a property interest in a security clearance, *see Doe v. Cheney*, 885 F.2d 898, 909 (D.C.Cir. 1989), a federal agency's revocation of a security clearance may give rise to a due process claim for injury to a liberty interest in reputation. *See Doe v. Casey*, 796 F.2d 1508, 1522 (D.C.Cir.1986); *Kartseva v. Dep't of State*, 37 F.3d 1524 (D.C.Cir. 1994) (recognizing that a government contractor's employee who was discharged after being disqualified by the Department of State may bring a cause of action against that agency for deprivation of a liberty interest without due process of law). The D.C. Circuit held in *Cheney* that, in order to satisfy a claim for deprivation of a liberty interest, a plaintiff must show that the government "both altered his status and stigmatized his reputation" without due process of law. *Cheney*, 885 F.2d at 910.

There are several ways in which the government may cause a change in status, including "discharging the employee, foreclosing the employee's future employment opportunities, or reducing the employee's rank or pay." *Casey*, 796 F.2d

ages liability for government officials who commit constitutional violations carried out by virtue of federal authority. Even construed as a *Bivens* action, the Court would still dismiss Mr. Ranger's claim for monetary damages because a federal agency is not a proper defendant under *Bivens*. *See FDIC v. Meyer*, 510 U.S. 471, 484–86, 114 S.Ct. 996,

127 L.Ed.2d 308 (1994); *Gabriel v. Corrections Corp. of America*, 211 F.Supp.2d 132, 137 n. 7 (D.D.C.2002) (*"Bivens* suits must be brought against individuals in their personal capacity, not against federal agencies."). The complaint identifies no individual who allegedly violated Mr. Ranger's constitutional rights.

at 1523. "The loss of government employment is the paradigmatic 'status change' in liberty-interest jurisprudence." *Id.* In his complaint, Mr. Ranger states that the CIA informed AMS that its continued employment of him "was a violation of CIA policy, which could jeopardize AMS's government contracts" and that AMS then fired him on February 28, 1997. Compl. ¶ 12–13. The Court infers from these allegations that the CIA's revocation of Mr. Ranger's security clearance was a direct cause of Mr. Ranger's dismissal from AMS and finds that this created a tangible change in his status for due process purposes.

 Under the second element of the liberty interest test discussed in *Cheney*, the plaintiff must show that the government stigmatized his reputation "by, for example, charging the employee with dishonesty, and that the stigma has hampered future employment prospects." *Doe v. Dep't of Justice*, 753 F.2d 1092, 1111 (D.C.Cir.1985). In *Cheney*, the D.C. Circuit held that the National Security Agency's ("NSA") removal of a cryptographic technician for security reasons did not "appear to be stigmatizing because NSA did not make public accusations that will damage [his] standing and associations in the community." *Cheney*, 885 F.2d at 910. It noted that the NSA had only disclosed the cryptographer's information to other federal agencies with whom the NSA had tried to place him and with his consent. A fellow district court later added that stigma occurs when the government's conduct "foreclose[s an employee's] freedom to take advantage of other employment opportunities by either (a) automatically excluding him from a definite range of employment opportunities with the government or (b) broadly precluding him from continuing in his chosen career." *M.K. v. Tenet*, 99 F.Supp.2d 12, 27 (D.D.C.2000) (citing *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527–28 (D.C.Cir.1994)).

 The Court finds that the CIA's letter revoking Mr. Ranger's security clearance does not "foreclose his freedom to take advantage of other employment opportunities" under the test set forth in *Kartseva*. *Id.* The CIA has since "notified Ranger that he was eligible for an ISSA/TS security clearance pending receipt of a sponsor's request that [he] work on a classified project." Compl. ¶ 19. Even so, Mr. Ranger argues that it would be "difficult if not impossible for [him] to find a sponsor to request him to work on a classified CIA project since the false and libelous material is now a matter of record." Opp. at 4. Trouble finding a sponsor, however, neither bars him from working on classified CIA projects nor sufficiently implicates his general employability in the field of corporate security—in light of his new eligibility for the highest level of clearance. *See Kartseva*, 37 F.3d at 1529 (The plaintiff "must show that her disqualification from future opportunities is automatic or formal, not simply that her having failed a National Agency Check places her at competitive disadvantage relative to other applicants for these positions.").

It is unclear, however, what information regarding the revocation of Mr. Ranger's security clearance has been, or might be, released outside the CIA and what effect that might have on his standing in the community. The complaint states that the CIA informed AMS that its employment of Mr. Ranger violated CIA policy. It is reasonable to infer at this stage of the litigation that the CIA provided AMS with a reason for its conclusion consistent with what it told Mr. Ranger in its April 1997 letter (revocation of his security access was "based on [his] history of financial irresponsibility and concern regarding

[his] judgment, honesty, and reliability") and that such disclosure damaged his standing in the community. Opp. Ex. A at 4. If the facts later demonstrate that the CIA merely informed AMS of the fact that Mr. Ranger was denied a security clearance and will never disclose the basis for the revocation to the public, then the CIA's conduct probably would not be considered stigmatizing. *See Casey,* 796 F.2d at 1523 ("[T]o be denied [a 'top secret' clearance] on *unspecified grounds* in no way implies disloyalty or any other repugnant characteristic.") (emphasis in original). Moreover, "[r]estricted disclosure [of defamatory information] to other federal agencies, with clear limits on further distribution, is not stigmatizing and does not infringe upon constitutional liberty interests." *Cheney,* 885 F.2d at 910.

 In addition to satisfying *Cheney* 's two-part test, Mr. Ranger must establish that he was deprived of his liberty interest without due process of law. He alleges that he was not given the opportunity to appear before the CIA's adjudicative tribunal or to present evidence. *See* Compl. ¶ 22. Under *Cheney,* due process "entitled [him] to a hearing in order to refute the charges against him and to clear his name." *Cheney,* 885 F.2d at 910. The plaintiff in that case was given notice of the NSA's concerns, submitted voluntarily to a psychiatric exam, received consideration by a board that recommended revoking his security clearance, submitted lengthy written materials in support of his position, and interviewed with the NSA Director. The D.C. Circuit found that this constituted a "meaningful opportunity" to contest the allegations concerning his security risk, as the Constitution does not require more "in the context of 'very sensitive' agencies, such as NSA." *Id.* The facts alleged in Mr. Ranger's complaint, along with all reasonable inferences drawn

therefrom, show that the CIA did not afford him a meaningful opportunity to contest the basis for its decision to revoke his security clearance.

In its motion to dismiss, the CIA argues that Mr. Ranger lacks standing to pursue a declaratory judgment and that his due process claim is moot. The CIA points to Mr. Ranger's acknowledgment that he is currently eligible for an ISSA/TS security clearance. *See* Compl. ¶ 19. According to the CIA, this means that "no live case or controversy will be resolved by the Court's declaration of constitutional rights in this litigation[.]" Mot. to Dismiss at 8.

[20, 21] "Article III case or controversy requirements apply as forcefully, of course, to relief sought under the Declaratory Judgment Act as to any other form of relief." *Penthouse Int'l, Ltd. v. Meese,* 939 F.2d 1011, 1018 (D.C.Cir.1991). The CIA, however, appears to be under the impression that Mr. Ranger's new eligibility for a security clearance either makes his due process claim unredressable by the Court or would render a declaratory judgment merely advisory. This misunderstands Mr. Ranger's alleged injury and requested relief. His due process claim is not posited on the notion that he had a *property* interest in his security clearance; he is not seeking the reinstatement of his access to classified materials. *But see* Mot. to Dismiss at 7. Rather, he asks the Court to declare that the CIA deprived him of a *liberty interest in reputation* without due process of law. The typical remedy for this type of claim is a "name-clearing" hearing. *See Doe v. Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Based on Mr. Ranger's assertion that the CIA's April 1997 letter is part of his record— assuming that he can prove a liberty interest in reputation (including stigma) during the course of this lawsuit—he would still be injured by the allegedly defamatory

statements contained in it. A declaratory judgment or "name-clearing" hearing would remedy this alleged injury.

Mr. Ranger has failed to state a claim for purposes of Federal Rule of Civil Procedure 12(b)(6) under the Equal Protection Clause of the Fourteenth Amendment, but has properly stated a claim under the Due Process Clause of the Fifth Amendment. The Court possesses jurisdiction over his due process claim for declaratory relief because the alleged injury is redressable and there exists a concrete case or controversy.

## IV. CONCLUSION

The CIA's motion to dismiss is GRANTED as to Mr. Ranger's claims for money damages and attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and his claim for declaratory relief under the Equal Protection Clause of the Fourteenth Amendment. The CIA's motion is DENIED as to Mr. Ranger's claim under the Due Process Clause of the Fifth Amendment. A separate order will accompany this memorandum opinion.